**Reversed and Rendered and Opinion filed June 12, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00064-CV

---

### ASHLAND INC. D/B/A VALVOLINE CO., Appellant

### V.

### HARRIS COUNTY APPRAISAL DISTRICT, Appellee

---

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2011-08661**

---

## O P I N I O N

In this case, we are asked to determine whether Ashland Inc.'s motor oil, grease, and gear oil are entitled to the ad valorem tax exemption available under the Texas Constitution and Texas Tax Code section 11.251 for freeport goods. Ashland contends the trial court erred in granting summary judgment in favor of the Harris County Appraisal District (HCAD) and against Ashland on Ashland's claim that these products are not petroleum products ineligible for the freeport exemption because they do not fall within the Tax Code's definition of "petroleum

products" as the "immediate derivatives of the refining of oil or natural gas." For the reasons explained below, we reverse and render in favor of Ashland.

## FACTUAL AND PROCEDURAL BACKGROUND

The freeport exemption allows certain goods and products designated as "freeport goods" to be moved through Texas without incurring any property tax, but it does not extend to "oil, natural gas, and other petroleum products." *See* Tex. Const. art. VIII, § 1-j(a); Tex. Tax Code § 11.251. In turn, the Tax Code defines "petroleum products" to mean "liquid and gaseous materials that are the immediate derivatives of the refining of oil or natural gas." *See* Tex. Tax Code § 11.251(j). For purposes of administering and operating appraisal districts, the state comptroller has provided a list of twenty-one products it considers to be the "immediate derivatives of the refining of oil or natural gas" as that term is used in Tax Code section 11.251. *See* 34 Tex. Admin. Code § 9.4201. Relevant here, the list includes "lubricants," but does not specifically identify motor oil, grease, or gear oil. *See id.* § 9.4201(11).

Ashland owns a facility in Harris County where it manufactures or acquires and temporarily stores automotive and industrial products for export to customers around the world under the Valvoline brand. Between 2009 and 2011, Ashland filed applications with HCAD for the freeport exemption on its motor oil, grease, and gear oil. HCAD approved Ashland's 2009 application for the freeport exemption on these products, but denied Ashland's 2010 and 2011 applications. Ashland protested the denials to HCAD's appraisal review board. HCAD's appraisal review board also denied the exemptions, and Ashland appealed the decision to the district court for de novo review. Ashland approximates it would have saved about $250,000 had the freeport exemptions been granted.

In the district court, the parties filed cross-motions for summary judgment

2

on the issue of whether Ashland's motor oil, grease, and gear oil are eligible for the freeport exemption. Ashland argued that its products are not the "immediate derivatives of the refining of oil or natural gas," but instead are products made from base oil and other chemicals which undergo complex and specific manufacturing processes in special facilities that are not refineries. HCAD argued that it is undisputed that base oil is a lubricant, and because motor oil is merely base oil mixed with performance additives, it is likewise a lubricant and is therefore specifically excluded from eligibility for the freeport exemption.[1] Each party objected to the other's summary-judgment evidence, but the trial court overruled all objections.

In a final judgment signed on October 22, 2012, the district court granted HCAD's motion for summary judgment and denied Ashland's motion for summary judgment, ruling that Ashland's motor oil, grease, and gear oil were not entitled to a freeport exemption in the years 2010 and 2011. Ashland's motion for new trial and motion to modify the judgment were overruled by operation of law, and Ashland timely appealed.

### ISSUES AND ANALYSIS

In two issues, Ashland contends the trial court erred by granting HCAD's cross-motion for summary judgment and denying Ashland's motion for summary judgment on its claim that it is entitled to a freeport exemption for motor oil, grease, and gear oil because these products are not the "immediate derivatives of the refining of oil or natural gas." Ashland also asserts that the trial court should have sustained Ashland's objections to two affidavits supporting HCAD's

---

[1] We note that both on appeal and at trial, both the parties and the trial court referred to the three products at issue, bulk and packaged motor oil, gear oil, and grease, collectively as "motor oil."

3

summary-judgment motion. By way of cross-issue, HCAD argues that the trial court should not have considered Ashland's expert's opinion concerning the meaning of "immediate derivatives" because it is unreliable and conclusory.

## I.    Standards of Review

We review the district court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A traditional motion for summary judgment is properly granted if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfurt Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

When, as in this case, both parties move for summary judgment, and the district court grants one motion and denies the other, we consider all of the summary-judgment evidence produced and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If we conclude that the district court erred, we render the judgment the district court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Interpretations of constitutional and statutory provisions are matters of law we review de novo. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). In construing the Texas Constitution, as in construing statutes, we rely heavily on the literal text and must give effect to the intent of the makers and adopters of the provision in question. *Id.*; *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001). If a statute is worded clearly, we

4

must honor its plain language, unless that interpretation would lead to absurd results. *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

## II. Summary of the Parties' Arguments on the Meaning of "Immediate Derivatives of the Refining of Oil or Natural Gas"

Ashland acknowledges that the Texas Constitution does not extend the freeport exemption to petroleum products, but emphasizes that the Tax Code limits the term "petroleum products" to those that are the "immediate derivatives of the refining of oil or natural gas." Ashland acknowledges that base oil is a lubricant produced during the refining process that is, consequently, an immediate derivative of the refining of oil or natural gas that is ineligible for the freeport exemption. But Ashland submits that, unlike base oil, its products are not immediate derivatives because they are produced after the refining process is complete, in a different facility, using base oil and other ingredients that are subjected to separate manufacturing processes. Ashland also argues that HCAD sought to controvert the supporting testimony of Ashland's expert, a chemical engineer, with affidavits of HCAD's own employees, who are unqualified to opine on Ashland's products, and that the trial court erred when it overruled Ashland's objections to HCAD's evidence.

HCAD responds that motor oil is merely base oil blended with performance additives in a process that is not substantially different from the refining process and therefore is also a lubricant that is an immediate derivative of the refining of oil. According to HCAD, the mere fact that the additives are blended with base oil at a different time or different location than a facility called a refinery does not change the analysis. Further, HCAD contends, the opinion offered by Ashland's expert is not supported by the actual facts of this case, and her affidavit is

inconsistent and contradictory. HCAD asserts that the affidavits of its employees are admissible because HCAD acts through its employees to carry out its legal duty to appraise property and administer tax exemptions; accordingly, the trial court properly denied Ashland's objections to them.

### A. The parties' supporting evidence concerning the meaning of "immediate derivatives of the refining of oil or natural gas."

#### 1. Ashland's summary-judgment evidence.

In support of its summary-judgment motion and in response to HCAD's cross-motion for summary judgment, Ashland presented the affidavits of Dr. Frances Lockwood, Ashland's senior vice-president of research and development and a chemical engineer, and Glenn Franck, Ashland's tax specialist. Franck's affidavit is primarily directed to the history of Ashland's applications for the freeport exemption for its products, the amount of taxes in dispute, and the authentication of Ashland's supporting documentation. HCAD does not challenge the admissibility of Franck's affidavit. Therefore, for purposes of the specific issue presented, we primarily focus on Dr. Lockwood's affidavit.

Dr. Lockwood's qualifications include a Ph.D. from Penn State University and a license as a Professional Chemical Engineer in Kentucky. In her affidavit, Dr. Lockwood opined that in the petroleum industry, and from a chemical engineering standpoint, the term "immediate derivatives of the refining of oil or natural gas" has a "specific and clear meaning." According to Dr. Lockwood, refining is "the process of purification of a substance or a form, in this case oil or natural gas," and immediate derivatives are "the immediate product of a next preceding object or composition, that is[,] the immediate products of the refining of oil or natural gas." Dr. Lockwood further opined that "motor oil, grease, and gear oil are not immediate derivatives of the refining of oil because they require

6

further manufacturing processes beyond refining, including the inclusion of chemicals and other additives, to produce a finished product." Instead, according to Dr. Lockwood, these products are considered "secondary derivatives" of the refining of oil, much like other products made from petroleum that require further manufacturing, such as paints, tires, inks, and resins.

Dr. Lockwood explained that the process of refining oil and natural gas begins with the distillation or fractionation of crude oils into separate hydrocarbon groups, and that various refining processes are used to yield the products identified in the comptroller's list of twenty-one immediate derivatives. Dr. Lockwood opined that, with some exceptions, the comptroller's list presents the products in descending order according to carbon chain and boiling point. She also attached exhibits to support her testimony, including a flow chart illustrating the refining process and the resulting product flows.

Concerning the inclusion of "lubricants" in the comptroller's list, Dr. Lockwood testified that base oil is an immediate derivative of the refining of oil and so is the type of lubricant referred to by the state comptroller. Dr. Lockwood acknowledged that Ashland's motor oil, grease, and gear oil are made with base oil, as well as a number of other products and chemicals, but stated that these chemicals and products are combined with base oil through manufacturing processes separate from oil refining. Dr. Lockwood also testified that base oil is not suitable for use in combustion engines, because it lacks the required oxidative stability and antiwear and antifriction properties that motor oil contains. Further, she opined, finished motor oil, grease, and gear oil cannot be separated into their component parts merely by reheating them.

Dr. Lockwood further testified that motor oil, grease, and gear oil do not appear on the comptroller's list and are not produced through the refining process

at a refinery. Additionally, Dr. Lockwood stated that Ashland is not a refiner of oil or natural gas, and Ashland's Texas manufacturing and packaging facility is not a refinery. Dr. Lockwood testified that Ashland's gear oil goes through a manufacturing process very similar to that of its motor oil. Dr. Lockwood also explained that, although Ashland does not manufacture the grease it sells, grease is manufactured after the refining process and Ashland may work with a manufacturer to design a special grease. Further, she stated that Ashland purchases grease as a finished and prepackaged product from third-party grease suppliers. Thus, Dr. Lockwood opined that Ashland's motor oil, grease, and gear oil are "secondary derivatives" of the refining of oil, not immediate derivatives.

## 2. HCAD's summary-judgment evidence.

In support of HCAD's cross-motion for summary judgment and response to Ashland's motion for summary judgment, HCAD presented affidavits of Grady Graham, a review appraiser for HCAD and Harvey Chevalier, an appraiser and civil engineer in HCAD's business and industrial property division.

Chevalier is a state registered professional appraiser and civil engineer who has worked in HCAD's Business and Industrial Property Division for sixteen years. He is not a chemical engineer. In his affidavit, Chevalier stated that HCAD initially denied Ashland's application for the freeport exemption on his recommendation. Chevalier also stated that he had reviewed the litigation file, including Dr. Lockwood's and Franck's affidavits, and he disagreed with Dr. Lockwood's conclusion that mixing and blending base oil with additives qualifies its motor oil for exemption. Chevalier opined that "[m]ixtures, like finished motor oil, are not chemically combined. HCAD does not grant the freeport exemption either on lubricant mixtures or blended motor gasoline containing additives." Chevalier also noted that if Dr. Lockwood's conclusion were correct, then "a wide

range of petroleum products which are refined, blended, and mixed would, for the first time, also qualify for the exemption" and "HCAD does not approve freeport exemptions for blended or mixed products including fuels and lubricants owned by other companies."

Graham, who has been employed by HCAD in various positions since 1985, is the HCAD employee primarily responsible for overseeing the litigation. Graham is a State Registered Professional Appraiser, and has been employed as both a review appraiser and the manager of the review appraisal section of HCAD. Graham testified that he reviewed Dr. Lockwood's affidavit, as well as information and publications from Valvoline and other companies in the petroleum industry, and determined that motor oil was included as a lubricant on the comptroller's list and therefore cannot be exempt from taxation. Graham opined that "[m]ixing or blending additives with base oil is common to other products on the Comptroller's list . . . including aircraft and motor fuels which also contain additives – and are not themselves eligible for exemption." Further, Graham opined, "[R]efineries can produce both unfinished (with few or no additives) and finished lubricants (with performance-enhancing additives), such as motor oil. Lubricants can also be produced in separate facilities." Graham also testified that HCAD maintained a consistent position, denying freeport exemptions for all items listed by the comptroller as an immediate derivative, whether owned by Ashland or other companies like Shell Oil Company, Exxon Mobil, Chevron, Phillips, or other entities.

Attached in support of Graham's affidavit were copies of the applicable constitutional, statutory, and administrative code provisions and three publicly available webpages reflecting (1) an article discussing Shell's fuels and the process of making them, (2) a brief summary of ExxonMobil's refining and downstream

9

operations, and (3) an article titled, "The Evolution of Base Oil Technology Industry Focus." Graham later supplemented his affidavit to include additional industry webpages, and in a second supplemental affidavit, Graham sought to authenticate the web pages included in his earlier affidavits.

**B. The parties' objections to each other's summary-judgment evidence and the trial court's rulings.**

In the trial court, both parties raised objections to each other's summary-judgment evidence, but the trial court overruled all of the objections. On appeal, Ashland complains that the trial court erred when it overruled Ashland's objections to HCAD's evidence. We review the trial court's evidentiary rulings for an abuse of discretion. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). A trial court abuses its discretion when it acts without regard to any guiding principles. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). A ruling that admits or excludes evidence will not result in reversible error unless the excluded evidence is determinative of the case. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *see* Tex. R. App. P. 44.1(a)(1).

**1. Ashland's objections to HCAD's evidence.**

Ashland argues that the trial court abused its discretion by denying its objections to the affidavits of Graham and Chevalier. Ashland objected to these affidavits on the grounds that neither Graham nor Chevalier were qualified by education, training, or experience to testify about the process of refining oil, and that their proffered opinions lacked a factual foundation. Ashland also complains that Graham's statement that "immediate derivatives" are those "including, but not limited to" the twenty-one items on the comptroller's list, when the list itself contains no such broad language, should have been excluded as an opinion on a pure question of law. Finally, Ashland complains that the various web pages on

which Graham relied as support for his opinions "have little to do with the facts of this case" and that such articles "certainly cannot be used to construe Texas law."

HCAD responds that it has a legal duty to appraise property and administer tax exemptions and, as a political subdivision, it must act through its employees. Graham and Chevalier are the HCAD employees assigned to evaluate and determine HCAD's position on the exemption Ashland seeks, and Ashland has not challenged their qualifications to perform this function. Thus, HCAD argues, the testimony of Graham and Chevalier is admissible. In response to Ashland's complaint that Graham mischaracterizes the comptroller's list as nonexclusive, HCAD argues that Graham's opinion is admissible as a mixed question of law and fact because his opinion applied the comptroller's definition to the question whether motor oil was an immediate derivative of the refining of oil or natural gas ineligible for the freeport exemption.

HCAD also argues that Ashland offers no legal basis for its sole objection to the exhibits attached to Graham's affidavit and does not identify any particular statements in the exhibits it contends are objectionable.[2] HCAD similarly argues that Ashland points to no specific statements or opinions by Chevalier it contends are without a factual foundation, and Ashland fails to present any analysis, argument, or authority to support its single-sentence assertion that Chevalier's opinions lacked a factual foundation. Thus, HCAD asserts, Ashland has failed to preserve this complaint for appeal and has inadequately briefed this issue.

We conclude that it is unnecessary to decide whether Ashland preserved error or the trial court abused its discretion in denying Ashland's objections to the

---

[2] HCAD notes that below, Ashland additionally objected to the exhibits to Graham's affidavit as unauthenticated, unverified, lacking a foundation, and consisting of unverifiable hearsay, but Ashland does not pursue those objections on appeal.

affidavits and attached exhibits of Graham and Chevalier. As discussed more fully below, the complained-of affidavits and exhibits do not alter the outcome of our analysis. To the extent the experts offer legal conclusions, however, their opinions are of no import because the issue is one of statutory construction for the courts, not the experts. *See Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012); *see also Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 95 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("It is not the role of the expert witness to define the particular legal principles applicable to a case; that is the role of the trial court.").

### 2. HCAD's objections to Ashland's evidence and Ashland's response.

In the trial court, HCAD objected to several of Dr. Lockwood's opinions as legal conclusions. On appeal, however, HCAD does not directly challenge the trial court's denial of its objections; instead, HCAD asserts that it was not required to object below because Dr. Lockwood's opinion is conclusory and unreliable on the face of the record and therefore is no evidence.

Specifically, HCAD asserts that Dr. Lockwood supports her opinion that motor oil is not an immediate derivative of the refining of oil or natural gas in part based on her assertion that the comptroller's list of immediate derivatives are in the same order and contain the same products as an exhibit attached to her affidavit, an opinion which HCAD contends is demonstrably incorrect. HCAD also complains that Dr. Lockwood's opinion is based in part on the fact that base oil is subjected to additional "complex manufacturing processes," but asserts that her descriptions of refining and of the purportedly complex manufacturing process do not differ in any significant way.

Ashland responds that HCAD has waived its complaint that Dr. Lockwood's

affidavit is unreliable and conclusory, because HCAD fails to challenge another affidavit of Dr. Lockwood which HCAD presented in support of its own motion for summary judgment, and HCAD does not challenge Franck's affidavit. According to Ashland, these unchallenged affidavits reiterate the undisputed facts that form the basis of Dr. Lockwood's expert opinion; specifically, Ashland imports raw materials into its manufacturing facility, which is not a refinery, and then produces new products for expert via trade secret and patented technology. To the extent that HCAD complains that Dr. Lockwood's testimony and supporting charts do not match the comptroller's list, Ashland notes that Dr. Lockwood conceded they did not match, and argues that this discrepancy fails to render her testimony unreliable or conclusory.

As explained below, we conclude that it is unnecessary to consider Dr. Lockwood's proffered technical definition and therefore we need not determine whether that portion of her opinion is unreliable and conclusory. We further conclude that Dr. Lockwood's descriptions of the differences between the refining of base oils and the post-refining manufacturing processes used to create Ashland's products are not conclusory or unreliable. Thus, we overrule HCAD's cross-issue.

## III.   Analysis

This appeal involves a narrow issue of statutory construction: whether Ashland's products are entitled to an ad valorem property tax exemption because they are not "the immediate derivatives of the refining of oil or natural gas." *See* Tex. Tax. Code § 11.251(j). Although the parties dispute the meaning of the statutory language, neither contends the statute is ambiguous. When a statute's words are unambiguous and yield but one interpretation, the judge's inquiry is at an end, and we give such statutes their plain meaning without resort to rules of construction or extrinsic aids. *Combs v. Roark Amusement & Vending, L.P.*, 422

S.W.3d 632, 635 (Tex. 2013).

## A. The meaning of "immediate derivatives of the refining of oil or natural gas"

Although the parties appear to agree that "derivative" means a substance or product made from another substance or product, they argue different interpretations of the word "immediate." Ashland points to dictionary definitions of "immediate" as "direct" and "acting or being without the intervention of another object, cause, or agency." *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 620 (11th ed. 2005). Similarly, "immediate" has been defined as "[o]ccurring without delay; instant," "[n]ot separated by other persons or things," or "[h]aving a direct impact; without an intervening agency." *Sweed v. State*, 351 S.W.3d 63, 69 (Tex. Crim. App. 2011) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)).

Ashland argues that motor oil, grease, and gear oil are not "immediate derivatives" of the refining of oil or natural gas, even if they are lubricants, because they are manufactured from many raw ingredients, after the refining process is complete, in a facility separate from a refinery. Ashland also argues that, in a technical context, chemical engineers in the petroleum field distinguish products according to when, where, and how they are manufactured. In connection with this argument, Ashland points to Dr. Lockwood's opinion that Ashland's products are secondary derivatives of the refining process, not immediate derivatives.

HCAD argues that "immediate" as used in the phrase "immediate derivative of the refining of oil" does not incorporate concepts of time or location of the refining process, but instead reflects a "cause-and-effect or a chain-of-events meaning." *See* BLACK'S LAW DICTIONARY (9th ed. 2009) ("immediate" definition 3, "Having a direct impact, without an intervening agency"). In HCAD's view,

because the refining process of converting hydrocarbons into base oils is "strikingly similar" to the blending of additives with base oil into the motor oil mixture, the manufacturing process of making motor oil is not an intervening cause or agency, but a continuation of the refining process yielding lubricants. In other words, HCAD maintains that motor oil "is never not base oil." HCAD also argues that Dr. Lockwood's proffered technical meaning of the subject phrase is based on inconsistencies and contradictions in her affidavit and demonstrates that there is no "specific and clear meaning" of the phrase.

Undefined terms in a statute are typically given their ordinary meaning. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). When an undefined term has multiple common meanings, the definition most consistent with the context of the statute's scheme applies. *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180–81 (Tex. 2013). Thus, the phrase "immediate derivatives" must be read in light of the statute and its constitutional basis. *See* Tex. Gov't Code § 311.011(a) (directing that words and phrases be read "in context"). Here, "immediate derivatives" modifies "of the refining of oil or natural gas," to refer to those products that result from the refining of crude oil or natural gas. Tex. Tax Code § 11.251(j). Further, the phrase "immediate derivatives of the refining of oil or natural gas" is intended to explain the Constitution's reference to "oil, natural gas, and other petroleum products." Tex. Const. art. VIII, § 1-j(a).

We conclude that, based on the common, ordinary definition of "immediate derivatives" and the contextual use of those words, the Tax Code necessarily means substances or products derived directly from the refining of oil or natural gas, not new or different products manufactured from immediate derivatives after the completion of the refining process. Although we agree to some extent with both parties that "immediate derivatives" implies there is no "intervening object,

15

cause, or agency," we disagree with HCAD's assertion that the word "immediate" in the context of the Tax Code necessarily excludes consideration of time, location, or the degree of separation from the refining process.

Such considerations are all relevant, particularly given the historical purpose of the freeport exemption, which is to promote economic development by exempting from taxation products assembled, stored, manufactured, processed, or fabricated in this state for distribution outside the state. *See* Tex. Const. art. VIII, § 1-j(a). For this reason, we need not consider Dr. Lockwood's proffered technical meaning or whether, as HCAD asserts, it is conclusory and unreliable. *See Traxler*, 376 S.W3d at 747 ("Regardless of the expert testimony, the issue before us is one of statutory construction for the courts."). And in any event, HCAD acknowledges that Dr. Lockwood's proffered technical definition of "immediate derivatives of the refining of oil or natural gas" as "the immediate products of the refining of oil or natural gas" does not differ in any meaningful manner from the common, ordinary meaning of the words.

**B.      Ashland conclusively demonstrates that its products are entitled to the freeport exemption.**

Having determined the meaning of the statutory language, we turn to the parties' evidence in support of their respective provisions to determine whether, on this record, either party conclusively established that Ashland's motor oil, grease, and gear oil are—or are not—new or different products manufactured from immediate derivatives of oil or natural gas refining after the completion of the refining process.

Ashland distinguishes its motor oil, grease, and gear oil from base oil by arguing that, unlike base oil, its products are manufactured after oil is refined, in separate facilities, by combining a variety of ingredients with base oil and

subjecting the mixture to additional manufacturing processes. As discussed above, Ashland points to Dr. Lockwood's affidavit to support its assertion. Dr. Lockwood testifies, and it is undisputed, that Ashland is not a refiner of oil or natural gas, and Ashland's Texas manufacturing and packaging facility is not a refinery. Ashland acquires raw materials from third-party suppliers, including refineries, located in the United States and abroad. The raw materials are converted by manufacturing, processing, or a combination thereof into "new and useful products" under the Valvoline brand name.

Dr. Lockwood further testified that motor oil, grease, and gear oil do not appear on the comptroller's list and are not produced through the refining process at a refinery. According to Dr. Lockwood, Ashland's motor oil is combined with various products and chemicals, including base oil, through "specific and complex" manufacturing processes separate from oil refining before being packaged for sale to customers. Dr. Lockwood stated that Ashland's gear oil goes through a "very similar manufacturing process" to that of motor oil. For these reasons, Dr. Lockwood opined, Ashland's motor oil and gear oil are not immediate derivatives of oil refining any more than products like WD-40, paints, or personal care products also made with base oil could be considered immediate derivatives. Dr. Lockwood also stated that grease, which Ashland does not manufacture but purchases as a finished and prepackaged from third-party suppliers for distribution, also is not an immediate derivative because it is manufactured for specific uses and conditions after the refining process. Thus, Dr. Lockwood opined that Ashland's motor oil, grease, and gear oil are not immediate derivatives of the refining of oil.

HCAD challenges Dr. Lockwood's statements on several grounds. First, HCAD culls statements from Dr. Lockwood's affidavit explaining the process of refining base oil and compares them to her description of the additional

17

manufacturing processes used to produce motor oil to argue that "[t]he refining process of converting hydrocarbons into base oils is strikingly similar to the blending of additives with base oil into the motor oil mixture." HCAD also asserts that Ashland has offered no evidence to establish that the two processes differ in any significant way. To further support its position, HCAD points to a page from a Valvoline publication attached to one of Graham's affidavits explaining that after motor oil has been used in vehicles, it can be recycled or "re-refined" to yield base oil. Therefore, HCAD argues, the manufacturing process of making motor oil is not an intervening cause or agency, but merely a continuation of the refining process yielding lubricants subject to taxation.

We disagree that Ashland's evidence reflects no significant distinction between refining base oil and manufacturing motor oil as HCAD suggests. First, Dr. Lockwood included numerous details in her affidavit of the separate manufacturing process used to make motor oil. Dr. Lockwood stated that a variety of chemicals purchased from third-party suppliers are used to manufacture motor oil, including detergents and dispersants, buffers such as calcium, magnesium or sodium detergents, polymeric additives, antiwear lubricants, antioxidant chemicals, corrosion inhibitors, and materials to condition seals and reduce foaming. Throughout the manufacturing process, the motor oil is tested to ensure that it meets company and industry specifications before it is ultimately produced, packaged, and sold. Dr. Lockwood explained that Ashland holds trade secrets and patents for much of its technology related to the manufacture of motor oil and gear oil, and information related to specific manufacturing processes is considered confidential and proprietary. Dr. Lockwood also testified that base oil is not

18

suitable for use in combustion engines, because it lacks the required oxidative stability and antiwear and antifriction properties.[3]

Dr. Lockwood acknowledged that some of the base oil used by Ashland is derived from a process using recycled lubricants, and other base oils are purely synthetic chemicals. Nevertheless, as explained in her affidavit, a significant number of chemicals and other products must be added to the base oil, which must then be subjected to specific manufacturing processes, to create the finished products. Moreover, Dr. Lockwood testified that finished motor oil cannot easily be separated into its component parts merely by reheating. She noted that in her prior work she directed an analytical team that developed multiple procedures to deconstruct motor oil, and "[i]t was quite difficult to separate out the polymers and the additives from the finished motor oil."

Although HCAD suggests that motor oil essentially remains base oil unless the manufacturing process results in a new compound that cannot be recycled or "re-refined" into its component parts, HCAD cites no evidence or authority to support this conclusion. Further, the statutory language of the Tax Code focuses only on whether the product is an "immediate" result of refining. To accept HCAD's argument would read the word "immediate" out of existence by concluding that all lubricants derived from oil are immediate derivatives of the refining of oil or natural gas, no matter when, where, or how they are manufactured.

---

[3] Relying on a publication titled, "The Evolution of Base Oil Technology Industry Focus," attached to Graham's affidavit, HCAD suggests that Dr. Lockwood's statement is incorrect because base oil was used as motor oil for many years, until it was discovered that additives enhanced their performance. Nothing in the article, however, suggests that today's motor oil and base oil are interchangeable.

HCAD also seeks to discredit Dr. Lockwood's assertion that motor oil, grease, and gear oil are not the immediate products of the refining of oil because they are not produced through the refining process at a refinery. HCAD points to Graham's affidavit, in which he states that "[R]efineries can produce both unfinished (with few or no additives) and finished lubricants (with performance-enhancing additives), such as motor oil." Graham's only support for this statement, however, is a reference to a webpage from Shell generally describing the manufacture of Shell's fuels and lubricants, as well as a news release concerning an agreement between Shell and Hyundai to extend their global lubricants agreement to 2015. Although the exhibit reflects that Shell companies manufacture and blend products for motoring and other purposes, and its products include motor oils, nothing in the exhibit supports Graham's specific statement.

In a further attempt to controvert Ashland's contention that its products are not made in a refinery, HCAD seizes on Ashland's argument that another exhibit attached to Graham's affidavit stands for the proposition that lubricants are manufactured "downstream" from the refining of crude oil. HCAD argues that the exhibit, a single webpage generally advertising ExxonMobil's downstream operations, actually supports HCAD's position: "Our downstream operations *refine* and distribute products *derived* from crude oil and other feedstocks" (emphasis HCAD's). Thus, HCAD argues, the use of "refine" by a major petrochemical company in the context of downstream operations contradicts Dr. Lockwood's statement. However, this ExxonMobil publication, much like the Shell publication just discussed, offers general information on its own products for purposes of public consumption which are of little, if any, relevance to this case. Neither ExxonMobil nor Shell are parties to this case, and neither publication in any way

20

addresses whether their lubricants are eligible for the freeport exemption under Texas law.

HCAD also argues that any product mixed or blended with additives must be "immediate derivatives" of the refining of oil because some of the products on the comptroller's list, such as motor and aviation gasoline, also are mixed and blended with additives before being sold to consumers. In his affidavit, Graham avers that motor gasoline, aviation gasoline, and lubricants may be mixed with additives either at the refinery or after, but before they are sold and used for their intended purposes. But adding a substance to various grades of gasoline or lubricants to enhance those products is distinguishable from the process of mixing base oil with raw ingredients in specialized manufacturing processes after the refining process is complete to create new and different products. Moreover, Graham's supporting evidence does not state that motor oil is manufactured during the refining process.

Finally, HCAD argues that, because motor oil "is never not base oil," adopting Ashland's position would lead to absurd results, allowing a petrochemical company to manufacture a freeport exemption where the legislature did not intend one. Repeating its argument that the manufacturing process Dr. Lockwood describes is similar to the treating and blending of the refining process, HCAD argues that petrochemical companies will next argue that "base oils" are exempt, because they are also treated and blended during the refining process and yield various grades of base oils with different properties. HCAD also posits that recognizing temporal and locational distinctions would allow refiners to delay certain steps or conduct them at separate locations not directly adjacent to the refineries and then argue that all but the products of the very first step of refining are exempt from taxation.

But HCAD offers no evidence or authority to suggest that refiners will claim that the products of refining are anything other than refining products. Further, the undisputed evidence shows that the freeport exemption would save Ashland, a leading manufacturer, a relatively small sum on its total tax bill—about $250,000—and HCAD offers no evidence that granting the exemption would seriously harm or erode the fiscal health of local government as it claims. Enforcing the statute as written is also consistent with its purpose of promoting economic development. *See* Tex. Const. art. VIII, § 1-j(a).

In summary, the freeport exemption does not apply to petroleum products that are immediate derivatives of the refining of oil or natural gas. It is undisputed that base oil, which is produced through the refining process at a refinery, is an immediate derivative of the refining process. Ashland's evidence supporting its summary-judgment motion demonstrates that once base oil is combined with numerous raw materials in a manufacturing process using trade secrets and patented technologies that are confidential and proprietary, in separate facilities that are not refineries, a new product is created that is no longer an immediate derivative of the refining of oil or natural gas.

On this record, Ashland has conclusively demonstrated that its motor oil, grease, and gear oil are entitled to the freeport exemption. Conversely, HCAD has not conclusively demonstrated that Ashland's products are ineligible for the freeport exemption on the basis that the process used to make them is merely a continuation of the refining process yielding lubricants.

Therefore, based on the summary-judgment record in this case, the trial court erred in granting HCAD's cross-motion for summary judgment and denying Ashland's motion for summary judgment. We further overrule Ashland's challenge

22

to the trial court's evidentiary rulings, and we conclude that HCAD's challenges to portions of Dr. Lockwood's opinions are either irrelevant or incorrect.

## CONCLUSION

We sustain Ashland's first and second issues with the exception of its challenge to the trial court's orders denying its objections to HCAD's summary-judgment evidence, we overrule HCAD's cross-issue, and we reverse and render judgment in favor of Ashland.


_____
Ken Wise
Justice


Panel consists of Justices McCally, Busby, and Wise.