**Affirmed in part, Reversed in part, Remanded, and Opinion filed December 6, 2018.**



In the

# Fourteenth Court of Appeals

### NO. 14-17-00748-CV

## TEXAS BLACK IRON, INC., Appellant

v.

## ARAWAK ENERGY INTERNATIONAL LTD., Appellee

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2016-68885**

## O P I N I O N

Texas Black Iron, Inc. (TBI), and Arawak Energy International Ltd. entered into a purchase order agreement for oil and gas drilling equipment. Arawak prepaid for the entire purchase order. TBI failed to deliver certain equipment and refunded a portion of the prepaid amount to Arawak. Arawak returned some of the equipment and sought a refund under the buy-back provision of the purchase order. TBI refused

to pay. Arawak filed claims against TBI and applied for a temporary injunction.[1] TBI filed counterclaims against Arawak. Arawak moved for traditional and no-evidence summary judgment. The trial court granted Arawak's motion on its contract claim and on TBI's contract and fraud counterclaims. The trial court awarded Arawak damages, attorney's fees, costs, and pre- and postjudgment interest. The trial court also granted Arawak's motion to strike TBI's amended answer and counterclaims.

TBI challenges the trial court's final judgment in seventeen issues. We conclude that the trial court properly granted summary judgment in Arawak's favor on its contract claim and TBI's contract and fraud counterclaims. We also conclude that the trial court acted within its discretion in striking TBI's amended answer and counterclaims. We conclude that the trial court erred in its award of attorney's fees to Arawak, as well as in its awards for costs and prejudgment interest. Accordingly, we affirm the trial court's final judgment in part and reverse it in part and remand for additional proceedings in accordance with this opinion.

## I. BACKGROUND

In early 2016, Arawak approached TBI to discuss purchasing various sizes—including 13-5/8″, 20″, and 26″—of casing and casing pup joints for an exploratory well Arawak planned to drill in the United Arab Emirates (UAE). Arawak and TBI negotiated the terms of the sale, which were reduced to writing in a one-page purchase order. Steve Yamin, the president of TBI, and Shahveer Kapadia, a director of Arawak, both executed the purchase order on February 22, 2016. The stated delivery date was April 11, 2016. The shipping terms were "DDP Umm Al Quwain,

---

[1] This court previously affirmed the temporary injunction. *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 582, 589 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

UAE." TBI was to pay any duty on the equipment.

The purchase order stated: "PAYMENT TERMS: WITHIN 3 BUSINESS DAYS AFTER RECEIPT OF CORRECT INVOICE." The purchase order also stated:

> BUY-BACK CONDITION. 75% OF PURCHASE VALUE AFTER DELIVERY OF RETURNED CASING TO VENDOR'S UMM AL QUWAIN YARD AND INSPECTION AT BUYER'S EXPENSE.

TBI sent Arawak a commercial invoice with wire instructions. Arawak prepaid $2,843,579.70 as requested in the invoice. TBI received and accepted this payment.

TBI failed to deliver the 13-5/8″ equipment, for which Arawak had paid TBI $1,112,743.00. TBI informed Arawak that Arawak would need to locate the 13-5/8″ equipment itself from another supplier. TBI refunded Arawak $400,000.00 for the 13-5/8″ equipment.

TBI delivered the 20″ and 26″ equipment. Arawak did not use and returned certain equipment—namely, 1,023.2 meters of the 26″ casing, 1,421.6 meters of the 20″ casing, and one 20″ casing pup. Applying the 75% buy-back price, the return value of this equipment was $768,304.00. Arawak sought a refund from TBI under the buy-back provision. TBI did not pay Arawak anything for this equipment.

Arawak filed suit against TBI in October 2016. Arawak originally brought claims for breach of contract and suit on sworn account, and later amended to add a claim for conversion.[2] TBI answered with a general denial and filed counterclaims against Arawak for breach of contract, fraud and fraudulent inducement, and violations of the DTPA.[3]

---

[2] The sworn-account and conversion claims are not at issue on appeal.

[3] The DTPA claims were nonsuited and are not at issue on appeal.

In May 2017, Arawak filed a no-evidence and traditional motion for summary judgment. Arawak moved for traditional summary judgment on its contract claim. Arawak argued that there was no material fact issue because the parties entered into an agreement; Arawak tendered performance by paying for the equipment; TBI breached the purchase order by failing to deliver the 13-5/8″ equipment and by refusing to honor the buy-back provision on the 20″ and 26″ equipment; and Arawak sustained total damages of $1,481,047.00.[4]

---

[4] To its summary-judgment motion, Arawak attached the following exhibits:

A. its original petition and application for temporary restraining order and temporary injunction, with attached:

- exhibit A—a letter from Yamin to Arawak dated February 20, 2016, with subject line: "Amendment to Quote No. 021316-01 for UAQP-1 Well"; TBI's amended quote initialed and dated February 20, 2016; TNI's initialed terms and conditions sheet; and the purchase order executed February 22, 2016; and

- exhibit B—an affidavit from Kapadia, dated October 6, 2016; the civil case information sheet; civil process request; and envelope details printout page;

B. TBI's counterclaim, with attached:

- exhibit 1—TBI's amended quote initialed and dated February 20, 2016; TBI's initialed terms and conditions sheet; and TBI's terms and conditions sheet; and

- exhibit 2—the purchase order executed February 22, 2016;

C. Arawak's first amended petition, application for TRO and temporary injunction, general denial, and answer, with attached:

- exhibit A—the February 20, 2016 letter from Yamin to Arawak; TBI's amended quote initialed and dated February 20, 2016; TBI's initialed terms and conditions sheet; and the purchase order executed February 22, 2016; and

- exhibit B—an affidavit from Kapadia dated October 6, 2016; and envelope details printout page;

D. the February 20, 2016 letter from Yamin to Arawak; TBI's amended quote initialed and dated February 20, 2016; TBI's initialed terms and conditions sheet; and the purchase order executed February 22, 2016;

E. an email from Yamin to Greg Szutiak, Yevgenly Khalenko, and Sergey Pan,

4

Arawak moved for no-evidence summary judgment on TBI's contract and fraud claims. Arawak argued that TBI had no evidence that Arawak breached the agreement or that Arawak made any material misrepresentations. Arawak also moved for traditional summary judgment on TBI's contract and fraud claims.

TBI filed a first amended answer, in which for the first time it alleged various affirmative defenses, and a first amended counterclaim, which added claims for tortious interference, and concerted action and/or conspiracy. Arawak filed a motion to strike TBI's amended answer and counterclaims. TBI filed a response,

dated February 17, 2016, with subject line: "QUOTE FOR CONSIDERATION—9 5/8—13 5/8";

F. an email from Keith Mustard to Yamin, dated February 18, 2016, with subject line: "Buy Back Terms";

G. an email from Yamin to Mustard, dated February 18, 2016, with subject line: "Re: Buy Back Terms";

H. an email from Yamin to Szutiak, dated February 18, 2016, with subject line: "Re: QUOTE FOR CONSIDERATION—9 5/8—13 5/8";

I. an email from Yamin to Szutiak, dated March 8, 2016, with subject line: "13 5/8";

J. an email from Pan to Yamin, dated February 20, 2016, with subject line: "Casing Purchase";

K. an email from Yamin to Swarlu Thomas, dated February 25, 2016, with subject line: "Re: Texas Black Iron Pipe Yard location";

L. an email from Yamin to Szutiak, dated March 3, 2016, with subject line: "RE: time—td";

M. an email from Yamin to Thomas, dated March 8, 2016, with subject line: "RE: Texas Black Iron Shipment ETA Dubai and Pipe yard location";

N. an email from Thomas to Yamin and Szutiak, dated April 20, 2016, with subject line: "26″ Casing duty payment in Jebel Ali Free Zone";

O. an email from Yamin to Pan, dated February 24, 2016, with subject line: "FW: pay'm";

P. an email from Yamin to Pan, dated February 28, 2016, with subject line: "RE: wire"; and

Q. Yamin's deposition.

and Arawak filed a reply.

TBI filed a response to Arawak's summary-judgment motion.[5]  TBI included its objections to Arawak's summary-judgment evidence.  With regard to Arawak's contract claim, TBI argued that Arawak did not conclusively establish its performance; TBI did not breach the buy-back provision; and TBI's performance was excused by Arawak's material breach, Arawak's fraud, the parties' mutual mistake, Arawak's interference, frustration of purpose, commercial impracticability, and impossibility.  With regard to TBI's counterclaims, TBI argued that it raised material fact issues on Arawak's breach and fraudulent misrepresentation and that Arawak had not shown it was entitled to traditional summary judgment on TBI's contract and fraud claims.

Arawak filed a reply in support of its summary-judgment motion and responded to TBI's objections.  Arawak argued that to avoid summary judgment on Arawak's claims and TBI's counterclaims TBI needed to introduce evidence to

---

[5] To its response, TBI attached the following exhibits:

1. a letter from Yamin to Arawak, dated February 5, 2016, with subject line: "Quote for RFQ for UAQP-1 Well"; and TBI's terms and conditions sheet;

2. an email from Pan to Yamin, dated February 20, 2016, with subject line: "Casing Purchase";

3. an email from Yamin to Pan, dated February 20, 2016, with subject line: "amended quote," with attached: the February 20, 2016 letter from Yamin to Arawak; TBI's amended quote initialed and dated February 20, 2016; and TBI's initialed terms and conditions sheet;

4. an email from Yamin to Pan, dated February 22, 2016, with subject line: "invoice for payment," with attached: invoice number 021316-01, dated February 22, 2016;

5. an email from Yamin to Pan, dated February 28, 2016, with subject line: "RE: wire"; and

6. Yamin's declaration, dated May 18, 2017.

create fact issues in support of both its affirmative defenses and counterclaims, and that TBI failed to do so. Arawak also objected to Yamin's declaration.[6]

On June 22, 2017, the trial court signed orders granting Arawak's motion for summary judgment and motion to strike.[7] The trial court ordered Arawak to submit its affidavit for attorney's fees. The trial court also signed an order on TBI's objections to Arawak's summary-judgment evidence. The trial court sustained TBI's objections to the pleadings Arawak attached to its summary-judgment motion, as well as to one email.[8] The trial court overruled all TBI's other objections.

Arawak submitted a brief in support of its attorney's fees, as well as an affidavit from its counsel regarding attorney's fees and costs with attached invoices. TBI filed a response, including an objection to Arawak's counsel's affidavit,[9] and attached a counter-declaration from TBI's counsel.

Arawak filed a motion for entry of final judgment.[10] TBI filed a response, including objections to the exhibits attached to Arawak's motion. The trial court overruled these objections.

On August 22, 2017, the trial court signed its final judgment in favor of

---

[6] The record does not contain a ruling on this objection.

[7] Arawak's summary-judgment motion originally was set for hearing on May 18, 2017. The summary-judgment hearing was reset to June 22, 2017, along with Arawak's motion to strike.

[8] The trial court sustained TBI's objections to exhibits A through C, and to exhibit N, the April 20, 2016 email from Thomas to Yamin and Szutiak.

[9] The record does not contain a ruling on this objection.

[10] To this motion, Arawak attached these exhibits: an email from Pan to Yamin, dated March 11, 2016, with subject line: "RE: Casing Delivery—REFUND"; and a certified letter from Arawak's counsel to Yamin, dated August 3, 2016, with subject line: "*Pre-litigation demand for refund payments relating to returned and undelivered equipment in accordance with Purchase Order/Quote No. 021316-01*," with attached: TBI's amended quote initialed and dated February 20, 2016, TBI's initialed terms and conditions sheet, the purchase order executed February 22, 2016, USPS Tracking Results, and an email from Arawak's counsel to TBI's counsel, dated August 25, 2016, with subject line: "FW: Arawak—Demand Letter."

Arawak. The trial court ordered that Arawak recover $1,481,047.00 from TBI due to TBI's breach of contract; Arawak recover $166,493.67 incurred as reasonable and necessary attorney's fees; Arawak recover $16,611.08 incurred as costs; Arawak was entitled to $77,641.36 representing 5% prejudgment on $1,664,151.74, beginning September 7, 2016, until the day before judgment was entered; TBI take nothing from Arawak; Arawak receive 5% postjudgment interest on the total judgment amount of $1,741,793.11; and Arawak shall be entitled to recover attorney's fees and costs "[s]hould TBI further appeal."

TBI filed a deposit in lieu of supersedeas bond and timely appealed.

## II.   ANALYSIS

TBI presents seventeen issues on appeal. Five issues complain of the trial court's error in granting summary judgment on Arawak's breach-of-contract claim. Three issues complain of the trial court's error in granting summary judgment on TBI's contract counterclaim. Three issues attack the trial court's granting summary judgment on TBI's fraud and fraudulent misrepresentation counterclaim. One issue challenges the trial court's rulings on TBI's objections to Arawak's summary-judgment evidence. In three issues, TBI argues that the trial court erred in its awards of attorney's fees, prejudgment interest, and costs. In its last two issues, TBI contends that the trial court abused its discretion in striking TBI's amended answer and counterclaims. We consider related issues together.

### A. Arawak's breach-of-contract claim

#### 1. Applicable law and standard of review

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant,

8

indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we must affirm summary judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Oliphint v. Richards*, 167 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

*Traditional.* Courts properly render traditional summary judgment if the motion and evidence show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). "A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim." *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)); *see* Tex. R. Civ. P. 166a(c). A defendant moving for summary judgment must conclusively disprove at least one element of the plaintiff's claim or prove every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Pressil v. Gibson*, 477 S.W.3d 402, 407 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

Once the movant facially establishes its right to summary judgment, the burden shifts to the nonmovant to present a material fact issue that precludes summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the

9

summary-judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007) (per curiam).

*No evidence.* A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict and is governed by the standards of Texas Rule of Civil Procedure 166a(i). *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i).

After the movant specifically states the elements for which there is no evidence, the burden shifts to the nonmovant to produce more than a scintilla of probative evidence raising a genuine issue of material fact on those elements. *See id.*; *Timpte Indus.*, 286 S.W.3d at 310; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when reasonable and fair-minded persons could differ in their conclusions. *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of a fact regarding a challenged element. *Id.* Unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i). If the nonmovant satisfies its burden of production on the no-evidence motion, then the trial court cannot properly grant summary judgment. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

### 2. Summary-judgment evidence

We first consider TBI's twelfth issue challenging the trial court's evidentiary

10

rulings. "We review the trial court's evidentiary rulings for an abuse of discretion." *Ashland Inc. v. Harris Cty. Appraisal Dist.*, 437 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997)). A trial court abuses its discretion when it acts without regard to any guiding principles. *Id.* (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)).

*Kapadia's affidavit.* First, TBI argues that because the trial court sustained its objections to exhibits A and C[11] attached to Arawak's motion for summary judgment, the trial court therefore excluded the exhibits in their entirety, including Kapadia's affidavit. We disagree. Arawak twice attached the affidavit to its summary-judgment motion (within both exhibits A and C) and identified Kapadia's affidavit as "properly sworn" by "a representative of Arawak." TBI objected to the exhibits containing Kapadia's affidavit on the sole ground that "pleadings, even if sworn, are not admissible as summary-judgment evidence," relying on *Hidalgo v. Surety Savings and Loan Association*, 462 S.W.2d 540, 545 (Tex. 1971).

Pleadings and affidavits have distinct meanings. *See* Black's Legal Dictionary 68 ("affidavit" is "a voluntary declaration of facts written down and sworn to by a declarant"), 1339 ("pleading" is "a formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses") (10th ed. 2014). Kapadia's affidavit included specific, detailed facts concerning the parties' contract and interactions; therefore, it amounted to "more than" a pleading. *Compare Colony Flooring & Design, Inc. v. Regions Bank*, No. 01-13-00210-CV, 2014 WL 2021823, at *5–6 (Tex. App.— Houston [1st Dist.] May 15, 2014, no pet.) (mem. op.) ("detailed and specific"

---

[11] *See supra* note 4.

11

affidavit attached to summary-judgment response constituted competent evidence), *with Keenan v. Gibraltar Savings Ass'n*, 754 S.W.2d 392, 393–94 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("verification" attached to summary-judgment response "amounted to nothing more than a responsive pleading" and did not constitute competent evidence).

Moreover, that the trial court did not exclude Kapadia's affidavit is consistent with the court's other evidentiary rulings. TBI raised objections to three paragraphs within Kapadia's affidavit, as included in exhibits A and C. The trial court individually overruled these objections. The trial court did not need to reach these objections if it already had excluded the affidavit. TBI did not raise any other objection to Kapadia's affidavit. Accordingly, we conclude Kapadia's affidavit is within our scope of review.

TBI next asserts that the trial court erred in overruling its particular objections to Kapadia's affidavit. TBI states that "[t]he challenged affidavit testimony was not admissible." TBI then provides a laundry list of ten objections without any substantive argument or analysis. We conclude that TBI waived any error through inadequate briefing. *See Reule v. M & T Mortg.*, 483 S.W.3d 600, 617–18 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

*Objections to other exhibits.* TBI argues that the trial court erred in overruling all its other objections to Arawak's summary-judgment exhibits D through I, exhibits K through M, and exhibits O and P "as there was no basis for admissibility of any of these materials."[12] TBI does not provide any substantive argument or analysis

---

[12] *See supra* note 4. Although TBI objected to exhibit J in the trial court, the trial court did not sustain or overrule, but rather entirely crossed out, TBI's objection in its order. On appeal, TBI does not challenge exhibit J, an email from Pan to Yamin, dated February 20, 2016, with subject line: "Casing Purchase." In any event, TBI also attached this email to its response as exhibit 2 and Yamin discussed this email in his deposition. Therefore, the trial court could, and we will, consider it. *See Lopez v. Exxon Mobil Dev. Co.*, No. 14-16-00826-CV, 2017 WL 4018359,

12

regarding, and therefore inadequately briefed and waived, its objections that these documents were hearsay or not based on personal knowledge. *See id.*

*Authentication.* In addition, TBI contends that Arawak's exhibits D through I, exhibits K through M, and exhibits O and P were not authenticated, not sworn, not identified, and not proved by sworn testimony. According to TBI, Arawak produced all these documents and therefore was required to authenticate them. Rule 166a(d) permits a party to use discovery products not on file with the clerk as summary-judgment evidence. *See* Tex. R. Civ. P. 166a(d). Arawak timely filed a rule 166a(d) notice more than 21 days before the hearing. *See Dalehite v. Nauta*, 79 S.W.3d 243, 245 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). However, "copies of documents must be authenticated in order to constitute competent summary judgment evidence." *In Estate of Guerrero*, 465 S.W.3d 693, 703–04 (Tex. App.— Houston [14th Dist.] 2015, pet. denied) (en banc). "A party cannot authenticate a document for use in its own favor by merely producing it in response to a discovery request." *Polmounter v. Keystone Food Prods., Inc.*, No. 14-05-00560-CV, 2006 WL 2548239, at *3 (Tex. App.—Houston [14th Dist.] Sept. 5, 2006, no pet.) (mem. op.) (citing *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 452 (Tex. App.—Dallas 2002, no pet.)); *see Blanche*, 74 S.W.3d at 452 ("Rule 166a(d) does not eliminate the need to authenticate documents used as summary judgment evidence simply because they were produced during discovery.").

Arawak does not dispute that it did not authenticate these documents. We examine each exhibit in turn to determine whether the trial court properly could consider it as summary-judgment evidence.

---

at *6 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, pet. denied) (mem. op.); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 344 n.14 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The trial court sustained TBI's objection to exhibit N, and Arawak does not appeal this ruling. We will not consider exhibit N in our review.

Arawak's exhibit D consisted of the February 20, 2016 letter from Yamin to Arawak; TBI's amended quote initialed and dated February 20, 2016; TBI's initialed terms and conditions sheet; and the purchase order executed on February 22, 2016. TBI cited the letter, amended quote, and terms and condition sheet in its summary-judgment response; it attached these items as part of exhibit 3 to its response. Therefore, the trial court could, and we will, consider these documents. *See Lopez v. Exxon Mobil Dev. Co.*, No. 14-16-00826-CV, 2017 WL 4018359, at *6 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, pet. denied) (mem. op.) (challenged document attached to summary-judgment motion was part of summary-judgment record and considered in scope of review where document was otherwise cited in and attached to timely summary-judgment response). Likewise, the trial court could, and we will, consider the purchase order, which was discussed in Yamin's deposition.[13] *See Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 344 n.14 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Deposition transcripts and the exhibits discussed in the deposition need no authentication and constitute proper summary judgment evidence.").

The emails contained in Arawak's exhibits F, H, I, L, and M[14] were discussed in Yamin's deposition. Therefore, the trial court could, and we will, consider them. *See id.* We also will consider the email contained in exhibit P, which TBI cited in and attached as exhibit 5 to its summary-judgment response. *See Lopez*, 2017 WL

---

[13] Deposition excerpts need not be authenticated. *See McConathy v. McConathy*, 869 S.W.2d 341, 341 (Tex. 1994) (per curiam). Arawak attached Yamin's entire deposition as exhibit Q to Arawak's summary-judgment motion. TBI did not object to and does not challenge exhibit Q.

[14] Yamin only discussed two of the emails nested within exhibit M. Accordingly, we will consider an email from Thomas to Yamin, dated March 6, 2016, with subject line: "Texas Black Iron Shipment ETA Dubai & Pipe yard location," and a responsive email from Yamin to Thomas, dated March 7, 2016.

4018359, at *6.

However, the emails contained in exhibits E, G, K, and O, as well as a portion of the various emails contained in exhibit M, were not authenticated, did not otherwise constitute competent summary-evidence, and could not properly be considered by the trial court. *See Guerrero*, 465 S.W.3d at 703–04; *Polmounter*, 2006 WL 2548239, at *3; *Blanche*, 74 S.W.3d at 452. Therefore, we will not consider them in our review.

We sustain TBI's twelfth issue in part and proceed to the merits.

### 3. Whether summary judgment was proper

As an overall first issue, TBI argues that the trial court erred in granting Arawak's summary-judgment motion because fact issues exist as to Arawak's contract claim. In its second, third, and fourth issues, TBI argues that the trial court erred in granting summary judgment because there was no evidence of, TBI's evidence disproved, and Arawak did not conclusively prove the elements of Arawak's contract claim. In its fifth issue, TBI contends that the trial court erred in granting summary judgment because the evidence conclusively proved its affirmative defenses. TBI discusses, and we consider, these related issues together.

To recover in a breach-of-contract case, Arawak must prove that: (1) a valid contract existed; (2) Arawak performed or tendered performance; (3) TBI breached the contract; and (4) Arawak was damaged as a result of TBI's breach. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Even considered in the light most favorable to TBI, the summary-judgment record shows that Arawak conclusively established the elements of its breach-of-contract claim. TBI and Arawak executed a final purchase order for the casing equipment on February 22, 2016. Within this purchase order, TBI agreed to provide

15

a set amount of 13 5/8″ casing and pup joints for the price of $1,112,743. TBI also agreed that it would buy back equipment at "75% OF PURCHASE VALUE AFTER DELIVERY OF RETURNED CASING TO VENDOR'S UMM AL QUWAIN YARD AND INSPECTION AT BUYER'S COST." Arawak paid to TBI the full price for the equipment. TBI was unable to deliver the 13 5/8″ equipment. TBI only refunded to Arawak $400,000 of the $1,112,743 Arawak paid for the 13 5/8″ equipment, which leaves $712,743. Arawak did not use and returned certain quantities of the 20″ and 26″ casing equipment. TBI refused to buy back and did not refund to Arawak any amount for the returned 20″ and 26″ equipment. Seventy-five percent of the amount Arawak paid for such equipment was $768,203.

*Arawak's performance.* TBI first takes issue with Arawak's performance, arguing Arawak's submission showed that Arawak did not comply with the prompt payment term of the agreement.[15] TBI contends that the contract required Arawak to make payment within three business days after receipt of TBI's invoice. According to TBI, this payment term was "material and necessary . . . because the period of time available to ship the casing and deliver it in time to meet [Arawak's] drilling schedule was short." We disagree.

Time is not ordinarily of the essence, and even a date stated for performance does not mean or imply time is of the essence. *See Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 390 (Tex. App.—Houston

---

[15] The summary-judgment record indicates that Arawak paid TBI the full amount of the purchase order but does not indicate the exact date Arawak successfully effected its wire payment to TBI. In his affidavit, Yamin states that "Arawak did not make its payment until more than seven days later." Yamin does not state that the seven days were "business days." TBI transmitted its commercial invoice to Arawak on Monday, February 22, 2016. On Sunday, February 28, 2016, Pan assured Yamin that the payment was "being processed" and there were "no issues," and Yamin responded, "Understood. Thanks for your help." At that point, only four business days had elapsed.

16

[1st Dist.] 2014, no pet.); *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "[T]hus, late performance generally is not a material breach of a contract." *Mobilelink San Antonio, LLC v. PNK Wireless Commc'n, Inc.*, No. 01-15-01048-CV, 2016 WL 7368066, at *3 (Tex. App.—Houston [1st Dist.] Dec. 20, 2016, no pet.) (mem. op.) (citing *Kennedy Ship*, 210 S.W.3d at 19). Instead, the contract must expressly make time of the essence or there must be something in the nature or the purpose of the contract and the circumstances surrounding it making it apparent that the parties intended time be of the essence. *See Capcor*, 509 S.W.3d at 390; *Kennedy Ship*, 210 S.W.3d at 19. Otherwise, "Texas courts will presume that the agreement is to be performed within a reasonable time." *Border Gateway, L.L.C. v. Gomez*, No. 14-10-01266-CV, 2011 WL 4361485, at *7 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (mem. op.) (citing *Gensco, Inc. v. Transformaciones Metalurgicias Especiales, S.A.*, 666 S.W.2d 549, 553 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd)). Where the facts are undisputed, whether time is of the essence is a question of law. *Maroy Int'l, Inc. v. Cantu*, No. 04-12-00193-CV, 2013 WL 1149066, at *2 (Tex. App.—San Antonio Mar. 20, 2013, pet. denied) (mem. op.).

The purchase order states: "PAYMENT TERMS: WITHIN 3 BUSINESS DAYS AFTER RECEIPT OF CORRECT INVOICE." It does not expressly state that timely payment was of the essence. Nor does it otherwise so indicate. The provision does not provide any right for TBI to otherwise cancel or terminate the contract if Arawak fails to make timely payment. *See Capcor*, 509 S.W.3d at 390 (inclusion of cancellation or termination provision indicates time is of essence). Nor does the contract contain language making Arawak's payment within three business days a condition of TBI's duty to deliver the equipment. *See id.* (same where contract includes language "making one's performance by a specified date a

17

condition of the other party's duty"). The contract also does not state that Arawak would be in default if payment was late or if late payment was not cured. *See Breakfront, LLC v. Sw. Guar. Inv'rs, Ltd.*, No. 04-15-00609-CV, 2017 WL 1244449, at *3 (Tex. App.—San Antonio Apr. 5, 2017, pet. denied) (mem. op.); *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.).

The evidence TBI points to does not show that the time of Arawak's payment was of the essence. Contrary to TBI's assertion, nothing in TBI's transmission of its invoice to Arawak on February 22, 2016, in the emails between Yamin and Arawak's representative Sergey Pan on February 28, 2016, or in Yamin's declaration shows it was "apparent" that both parties intended the within-three-business-days-after-invoicing timing of Arawak's payment be of the essence.[16] *Cf. Kennedy Ship*, 210 S.W.3d at 19–20 (June delivery date was of essence where purpose of contract was supplying vessel for shrimping and both fisherman buyer and boat builder testified to importance of fisherman having vessel by start of shrimp season in July).[17] Arawak conclusively showed that it provided payment in full within a reasonable amount of time (approximately one week after being invoiced). TBI has not raised a fact issue suggesting otherwise.

Next, TBI contends that because Arawak "without excuse, failed to pick up

---

[16] Considered in the light most favorable to TBI, Yamin's declaration does not indicate anything about what Arawak (as opposed to TBI) knew or intended regarding the timing of Arawak's payment.

[17] Even if the contract expressly makes time of the essence or there is evidence that the parties intended to make time of the essence, such a provision may be waived. *Kennedy Ship*, 210 S.W.3d at 20. "A waiver of time of performance of a contract will result from any act that *induces* the opposite party to believe that exact performance within the time designated in the contract will not be insisted upon." *Id.* (citation omitted). TBI does not dispute that it accepted Arawak's late payment. *See Maroy Int'l*, 2013 WL 1149066, at *3 (party waived agreement provisions setting forth date and amount of payments by accepting late payments and payment for incorrect amount); *see also Mobilelink San Antonio*, 2016 WL 7368066, at *3) ("By accepting the assignments, Mobilelink waived the time-is-of-the-essence clause.").

18

and accept the 26″ casing and returned and rejected the 20″ casing," Arawak did not conclusively establish its compliance or performance. TBI cites Yamin's affidavit without providing any discussion or analysis regarding how Arawak's actions amount to lack of either compliance or performance under the purchase order.[18] In any event, we disagree.

We look to the contract to determine Arawak's obligations. If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and we will construe the contract as a matter of law. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Valence Operating*, 164 S.W.3d at 662. We focus on the language used in the contract because it is the best indication of the parties' intent. *Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex. 2008). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating*, 164 S.W.3d at 662. We may not rewrite the contract or add to its language under the guise of interpretation. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). Rather, we must

---

[18] The entirety of TBI's discussion on this point consists of:

In addition, Appellant's evidence showed that Appellee, without excuse, failed to pick up and accept the 26" casing and returned and rejected the 20" casing. (CR at 324 ¶ 15). For this additional reason, Appellee did not conclusively establish its compliance or performance.

19

enforce the contract as written. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000).

No party argues, and we do not conclude, that the language of the buy-back provision of the purchase order is ambiguous. According to its plain language, the buy-back provision provides that TBI's refund is (1) 75% of the purchase value, (2) after delivery of the returned casing to TBI's Umm Al Quwain yard,[19] where (3) Arawak pays the cost of inspection. Under the contract, Arawak was required to pay TBI within a reasonable time of invoicing for all the casing as described and priced in the purchase order. Neither the buy-back provision nor any other contract language requires Arawak to "pick up" or "accept" already-paid-for casing in order to invoke or as part of the buy-back provision. Neither the buy-back provision nor any other contract language states that Arawak would be unable to "reject" already-paid-for casing and, in fact, requires "returned" casing. Nor did the contract require Arawak to provide any "excuse" in order to invoke or as part of the buy-back provision. TBI has not raised a fact issue on Arawak's performance.

*TBI's breach of the buy-back provision.* Next, TBI argues Arawak did not conclusively establish that TBI breached the buy-back provision. Essentially, TBI contends that the buy-back provision only applies to "remnants" of casing, and because Arawak returned significant amounts of equipment, it did not qualify for a refund. The contract language does not bear out TBI's interpretation. Again, the parties do not argue, and we do not conclude, that the language of the buy-back provision is ambiguous. There is no language stating that the buy-back provision would only apply to "remnants." There is no language either in the buy-back provision or elsewhere in the purchase order setting any limitation on the amount of

---

[19] According to Yamin, TBI successfully imported the 20″ and 26″ casing into the UAE and stored it at the Petrasco Energy pipe yard, "an alternate location approved by Arawak."

casing that Arawak could return.

TBI attempts to rely on extrinsic evidence in the form of pre-purchase order written communications between the parties discussing the buy-back term. These discussions included the term "remnants."[20] However, we may consider the parties' interpretation of the contract through extrinsic or parol evidence only if we first determine the contract is ambiguous. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764–65 (Tex. 2018); *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996) (per curiam); *Kennedy Ship*, 210 S.W.3d at 22. Parol evidence is not admissible for the purpose of creating an ambiguity where none exists. *Nat'l Union Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam); *Kennedy Ship*, 210 S.W.3d at 22. Nor may extrinsic evidence be used to add to, alter, or contradict the contract's text. *URI*, 543 S.W.3d at 767. Here, the buy-back provision of the purchase order is unambiguous and does not include this "remnants" term. TBI has not provided, and we have not located, any authority indicating that parol evidence may be considered where it seeks to impose a limitation missing from the contract's text. We therefore reject TBI's attempt to rewrite or add to the contract.

Next, TBI argues Arawak did not conclusively establish that the 26″ casing qualified for or that TBI breached the buy-back provision because Arawak did not "pick up" or "accept" such casing. We already have rejected this argument with regard to Arawak's performance. TBI additionally argues that "there was never any delivery to [TBI] of any returned 26″ casing" under the buy-back provision. But TBI's interpretation of the buy-back provision is overly narrow. Contrary to TBI's position, the buy-back provision does not state that the casing had to be "loaded out onto trucks or moved in any manner." TBI has not provided, and we have not

---

[20] Other parol evidence of written communications between the parties cited by Arawak did not include the term "remnants" when discussing the buy-back provision.

21

located, any authority indicating that delivery and return of goods strictly requires physical movement. The buy-back provision provides that buy back occurs "after delivery of returned casing." The meaning of "delivery" includes the handing over of property or the supply or provision of something. *See* New Oxford American Dictionary 459 (3d ed. 2010). The meaning of "returned" includes having been given, put, or sent back to a place or person. *See id.* at 1493.

TBI procured and delivered the 26″ casing, for which Arawak already had paid in full. Arawak sought to return the 26″ casing to TBI under the buy-back provision. That is, Arawak bought the casing and then wanted TBI to buy it back. Just because the 26″ casing was not physically moved away from and back to the pipe yard does not mean Arawak could not provide or give it back to TBI for purposes of seeking the buy-back refund. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) ("We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). We likewise reject this argument.

*No judicial admission.* Finally, TBI contends that Arawak judicially admitted that "the buy back was as to remnants." A judicial admission "occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). A judicial admission cannot be disputed by the admitting party. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). "Once a fact is conclusively established by judicial admission, jury questions concerning the fact need not be submitted." *Auld*, 34 S.W.3d at 905. Only clear, deliberate, and unequivocal statements constitute judicial

22

admissions. *Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (per curiam).

As discussed above, whether "the buy back was as to remnants" involves interpretation of the purchase order. Where, as here, the contract is unambiguous, this presents a question of law for the court. *See SAS Inst.*, 167 S.W.3d at 841 (citing *Coker*, 650 S.W.2d at 393). It does not present a fact question eligible for submission to the jury, and therefore, is not capable of being judicially admitted. *See Auld*, 34 S.W.3d at 905; *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.) ("A party may not judicially admit a question of law." (citation omitted)). In any event, Arawak did not clearly admit that "the buy back was as to remnants." Rather, Arawak consistently pleaded its interpretation that the buy-back provision of the purchase order applied to any and all returned casing.[21] *See Regency*, 936 S.W.2d at 278 ("Regency's second amended petition, far from being a clear admission of an obligation to assume TAB's duty to build out the space in question, actually requests a declaration from the trial court that the lease in question is void."). Nor does the mere citation of TBI's initialed terms and conditions sheet, which included "remnants" language and predated the purchase order,[22] rise to the level of a judicial admission that the purchase order included a "remnants" term. *See Guerrero*, 465 S.W.3d at 705–06 (citing *Auld*, 34 S.W.3d at 905).

---

[21] In its first amended petition, Arawak stated: "The Terms and Conditions of the Purchase Order include a 'buy-back' provision in which TBI agreed to refund 75% of **any equipment** that Arawak returned to TBI." (Emphasis added.) Arawak also stated: "The Purchase Order that was signed by all parties also indicated that the 'buy-back condition' was to apply to **all** returned casing." (Emphasis added.) Arawak referred to the purchase order in its amended petition and attached the purchase order to its summary-judgment motion.

[22] Arawak referred to this document in its amended petition and attached this document to its summary-judgment motion.

*TBI's affirmative defenses.* Once Arawak proved its entitlement to summary judgment on its contract claim as a matter of law, it became TBI's burden as the nonmovant to present grounds for avoiding summary judgment. *See Leonard v. Knight*, 551 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2018, no pet.). TBI contends its evidence showed that Arawak's contract claim was barred or excused by TBI's affirmative defenses of interference, frustration of purpose, impracticability, impossibility, estoppel, fraudulent inducement, mutual mistake, and Arawak's material breach.[23]

To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense. *Id.* (citing *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). The nonmovant has the burden to and must come forward with evidence sufficient to raise a genuine issue of material fact on every element of its affirmative defense. *Id.*; *see Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Lujan*, 433 S.W.3d at 704; *Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

*Material breach.* With regard to TBI's defense that Arawak's material breach excused TBI from further performance, *see Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994), neither in its response nor on appeal does TBI cite any specific evidence in the summary-judgment record that could raise a fact issue regarding any of the elements of this defense. *See Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet.)

---

[23] TBI did not plead any affirmative defenses in its original answer. TBI included these defenses in its (stricken) first amended answer. However, TBI also relied on certain of them in its summary-judgment response, and we may consider these defenses on appeal. *See Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 244 (Tex. App.—Houston [14th Dist.] 1996, no writ).

24

("In order to rely on its affirmative defenses to defeat Westlake's motion for summary judgment, it was incumbent upon CCP to come forward with evidence to raise a genuine issue of material fact as to each element of each of its affirmative defenses. CCP did not."). In addition, we already have considered and rejected TBI's arguments that evidence of Arawak's untimely payment, failure to pick up and accept casing, and rejection and return of casing raised any material fact issue on Arawak's performance. Because a breach of contract occurs when a party fails to perform on a promise, this evidence likewise fails to raise a fact issue on any breach by Arawak to defeat summary judgment. *See XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (question of fact arises on issue of breach only to extent there is dispute as to whether party performed).

*Fraudulent inducement.* We next consider TBI's fraudulent-inducement defense. A contract is subject to avoidance on the ground of fraud. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *see Cecil v. Zivley*, 683 S.W.2d 853, 857 (Tex. App.—Houston [14th Dist.] 1984, no writ). The burden is on the party seeking to avoid the contract to prove that the contract was fraudulently induced. *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2006, no pet.). To prevail on a fraudulent-inducement contention, a party must establish the elements of fraud "as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990). The elements of fraud are (1) a material representation, (2) which was false, (3) made with knowledge of its falsity or made recklessly as a positive assertion without any knowledge of the truth, and (4) made with the intention that the misrepresentation should be acted on by the other party, where (5) the other party acts in reliance on the misrepresentation and (6) thereby

suffers injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998).

As it did in its response, TBI cites a portion of Yamin's declaration. Neither in its summary-judgment response nor its brief does TBI provide the elements of fraudulent inducement or any substantive analysis of how Yamin's declaration supports each of the elements of its fraud defense—instead merely stating that TBI "submitted summary judgment evidence of the fraudulent misrepresentations by A[rawak] that induced [TBI] to enter the agreement at issue and that established the elements of a fraud defense." *See Sandhu v. Pinglia Invs. of Tex., L.L.C.*, No. 14-08-00184-CV, 2009 WL 1795032, at *6 (Tex. App.—Houston [14th Dist.] June 25, 2009, pet. denied) (mem. op.) ("Because Sandhu failed to present and specify the elements of his fraud claim on which he alleged fact issues, he has not presented grounds for reversal."); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116–17 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (nonmovant did not defeat summary judgment where failed to cite elements of or argue why affidavit raised fact issues on affirmative defense of fraudulent inducement). Further, Yamin's declaration entirely fails to address the requisite elements of Arawak's knowledge or recklessness regarding the falsity of the representation, and of Arawak's intent to induce TBI's reliance on its misrepresentation. *See Sandhu*, 2009 WL 1795032, at *6. Therefore, TBI has not met its burden and failed to defeat Arawak's entitlement to summary judgment on its contract claim based on a fraudulent-inducement defense. *See Leonard*, 551 S.W.3d at 909.

*Mutual mistake.* TBI also argues that its performance was excused by mutual mistake. TBI points to the omission of the term "remnants" from the purchase order as evidence of the parties' mutual mistake, as well as "[t]he parties' last communications to each other" in email communications dated February 20, 2016,

26

which included the term "remnants." According to TBI, both TBI and Arawak "were acting under the same misunderstanding of the same material fact." We disagree.

"Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided." *Williams*, 789 S.W.2d at 264. However, only under "narrow circumstances" will a party be able to raise a fact issue to set aside a contract based on mutual mistake. *See id.* at 265. "The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain." *Id.* The question of mutual mistake is not determined by self-serving subjective statements of the parties' intent, but rather solely by objective circumstances surrounding execution of the contract. *See id.* at 264. For example, we consider "the knowledge of the parties and the substance of the negotiations at the time of the contract execution." *Smith v. Lagerstam*, No. 03-05-00275-CV, 2007 WL 2066298, at *4 (Tex. App.— Austin July 19, 2007, no pet.) (mem. op.).

We conclude that the objective facts in this case do not fit the narrow circumstances recognized in *Williams*. *Williams* involved an individual who executed a full settlement release immediately after an automobile accident and later discovered she had sustained head and neck injuries, which neither party knew at the time of the release. *See* 789 S.W.2d at 264. In contrast, this case involves an arms'-length transaction negotiated by Yamin, who has more than 30 years' experience in the oil and gas well tubular goods business. The evidence reveals that the parties discussed the scope of the buy-back provision as part of their negotiations. Both Arawak and TBI were aware Arawak preferred a buy-back term that would cover a full string of casing. During negotiations, Yamin indicated to Arawak's representative Greg Szutiak that TBI would be willing to "buy back at 75% of the selling price" after inspection. As discussed above, Arawak's final purchase order,

27

accepted and signed by TBI, does not include the "remnants" term. Although some communications between the parties may have included the "remnants" term, at most that evidence raises an issue of unilateral mistake which would have been prevented had Yamin properly read the purchase order at the time of its execution.[24] *See Nealy v. DSF Advanced Staffing, Inc.*, No. 09-09-00431-CV, 2010 WL 2011517, at \*4–5 (Tex. App.—Beaumont May 20, 2010, no pet.) (mem. op.) (no fact issue raised on mutual mistake); *N. Nat. Gas Co. v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex. App.—El Paso 2004, no pet.) (same where party seeking to avoid summary judgment "offered no evidence that [other party] likewise suffered from a mistake of fact"). Because the summary-judgment evidence fails to raise a material fact issue as to mutual mistake, TBI did not meet its burden to avoid summary judgment on Arawak's contract claim on that basis.

*Other defenses.* Finally, we turn to TBI's defenses of interference,[25] frustration of purpose, impracticability, impossibility, and estoppel. We do not consider estoppel because TBI did not raise it in its summary-judgment response. *See* Tex. R. Civ. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Cook Composites*, 15 S.W.3d at 140. Neither in its response nor on appeal does TBI cite any specific evidence in the summary-judgment record that could raise a fact issue regarding any of the elements of any of the other defenses. *See Cook Composites*, 15 S.W.3d at 139. We conclude that TBI failed to carry its burden to defeat summary judgment, and the trial court did not err in granting summary judgment in favor of

---

[24] TBI did not raise any unilateral-mistake defense in response to Arawak's summary-judgment motion.

[25] TBI also argues that Arawak's "interference conduct" constituted fraud that vitiated the transaction. However, TBI did not expressly present this argument to the trial court as part of its fraud defense in its summary-judgment response. *See Sandhu*, 2009 WL 1795032, at \*6. Nor does TBI cite any evidence to support such "interference conduct." *See Cook Composites*, 15 S.W.3d at 139.

Arawak on its contract claim.

We overrule TBI's first through fifth issues.

## B. TBI's contract counterclaim

In its related sixth through eighth issues, TBI challenges the trial court's granting of summary judgment against TBI's counterclaim for breach of contract because Arawak did not conclusively disprove any essential element, Arawak did not conclusively prove all elements of any affirmative defense, and TBI offered more than a scintilla of evidence on the essential elements. Arawak moved for both no-evidence and traditional summary judgment on TBI's contract counterclaim. Where the trial court did not specify the ground or grounds it relied upon for its summary-judgment ruling, we must affirm on any meritorious ground. *See Carr*, 776 S.W.2d at 569. We ordinarily address the no-evidence motion first when both no-evidence and traditional summary-judgment motions are filed. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

In its no-evidence motion, Arawak argued TBI had no evidence that Arawak breached the purchase order. As it did in its response, TBI merely states (without any citation) that it showed far more than a scintilla of evidence regarding its contract claim. Because TBI did not specifically identify any evidence submitted with its response, we conclude that TBI failed to carry its burden to produce more than a scintilla of evidence of any contract breach by Arawak, and therefore the trial court did not err in granting no-evidence summary judgment against TBI on its contract counterclaim. *See Stow v. Slammin 4, LLC*, No. 14-15-00044-CV, 2016 WL 3134520, at *8 (Tex. App.—Houston [14th Dist.] June 2, 2016, pet. denied) (mem. op.) (affirming no-evidence summary judgment where appellants did not cite any evidence submitted with summary-judgment response); *see also Berry v. Covarrubias*, No. 14-03-01137-CV, 2004 WL 1631117, at *4 (Tex. App.—Houston

29

[14th Dist.] July 22, 2004, no pet.) (mem. op.) ("[A]lthough Berry attached summary judgment proof to his response to appellees' summary judgment motions, he did not direct the trial court to the portions of his evidence supporting the elements appellees challenged on each of his claims. He does not do so in this court. We are not required to marshal Berry's proof and may overrule his challenges to the summary judgment based on his failure to do so.").

Moreover, we already have determined that even viewed in the light most favorable to it TBI failed to raise more than a scintilla of evidence on the essential elements of its affirmative defense of material breach in order to avoid summary judgment on Arawak's contract claim. *See Cook Composites*, 15 S.W.3d at 139 ("A defendant seeking to avoid summary judgment based on an affirmative defense is in much the same position as a plaintiff seeking to avoid [no-evidence] summary judgment on an affirmative claim."). TBI's counterclaim for breach of contract involves the same elements as its affirmative defense based on Arawak's material breach. In addition, TBI's counterclaim for breach of contract is based on the same factual allegations as its material-breach affirmative defense, *i.e.*, that Arawak failed to comply with the timely-payment provision, failed to accept the 26″ casing, and rejected and returned the 20″ casing.[26]

We overrule TBI's fifth through eighth issues.[27]

---

[26] TBI also points to Arawak's alleged interference in TBI's performance of the agreement. However, just as in its attempt to rely on interference as an affirmative defense, TBI provides no record citations or substantive analysis, and does not meet its burden to raise a fact issue on Arawak's breach. *See Stow*, 2016 WL 3134520, at *8; *see also Berry*, 2004 WL 1631117, at *4.

[27] We need not reach TBI's arguments related to Arawak's traditional summary-judgment motion on TBI's contract counterclaim. *See* Tex. R. App. P. 47.1; *Ridgway*, 135 S.W.3d at 600; *Carr*, 776 S.W.2d at 569.

## C. TBI's fraud and fraudulent-inducement counterclaim

Next, we consider TBI's related ninth through eleventh issues. TBI contends that the trial court erred in granting Arawak summary judgment as to TBI's counterclaim for fraud and fraudulent inducement because Arawak did not conclusively disprove any essential element, Arawak did not conclusively prove all the elements of any affirmative defense, and TBI offered more than a scintilla of evidence on the essential elements.

In its no-evidence motion, Arawak argued that TBI had "no evidence that would indicate that Arawak made any material misrepresentations regarding the Umm Al Quwain yard." That is, Arawak challenged the specific elements that it (1) made a material representation, (2) which was false. *See Shafaii Children's Tr. & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*, 417 S.W.3d 614, 624 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (courts and parties "often group together the first two 'elements' of fraud").

As it did in its response, TBI merely states (without any citation) that it showed far more than a scintilla of evidence regarding its fraud claim. Because TBI did not specifically identify any evidence submitted with its response, we conclude that TBI failed to carry its burden to produce more than a scintilla of evidence of any material misrepresentation by Arawak, and therefore the trial court did not err in granting no-evidence summary judgment against TBI on its fraud counterclaim. *See Stow*, 2016 WL 3134520, at *8; *see also Berry*, 2004 WL 1631117, at *4.

Moreover, we already have determined that even viewed in the light most favorable to it, TBI failed to raise more than a scintilla of evidence on the essential elements of its affirmative defense of fraudulent inducement in order to avoid summary judgment on Arawak's contract claim. *See Cook Composites*, 15 S.W.3d at 139. TBI's counterclaim for fraud and fraudulent inducement involves the same

31

elements and is based on the same factual allegations as its fraud affirmative defense.

We overrule TBI's ninth through eleventh issues.[28]

## D. Arawak's attorney's fees

In its thirteenth issue, TBI challenges the attorney's fees awarded to Arawak on its contract claim by the trial court. TBI argues that the trial court erred in granting summary judgment as to Arawak's attorney's fees because there was no evidence or no competent evidence of presentment, judicial notice of reasonable and necessary fees was impermissible, there was no segregation of recoverable from nonrecoverable fees, there was no evidence of qualifications of legal staff, and the evidence on fees was controverted.

We first consider TBI's argument that Arawak failed to conclusively demonstrate presentment because it is dispositive. Specifically, TBI contends that the trial court erred by overruling TBI's objections to Arawak's presentment evidence and accordingly the summary judgment for attorney's fees is not supported by admissible evidence.[29]

In its amended petition, Arawak cited chapter 38 as the basis to recover attorney's fees on its claim for breach of the purchase order.[30] Arawak included a prayer for attorney's fees in its summary-judgment motion. Arawak filed a brief in support of its recovery of attorney's fees and attached an affidavit from its counsel

---

[28] We need not reach TBI's arguments related to Arawak's traditional summary-judgment motion on TBI's fraud counterclaim. *See* Tex. R. App. P. 47.1; *Ridgway*, 135 S.W.3d at 600; *Carr*, 776 S.W.2d at 569.

[29] Arawak did and does not respond to TBI's argument regarding the admissibility of its exhibits.

[30] Section 38.001 provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2015).

32

and invoices. In its response, TBI argued that Arawak offered no evidence of presentment. Arawak filed a motion for entry of final judgment and attached exhibits to support presentment.[31] TBI objected to these exhibits, and the trial court overruled the objections.

Attorney's fees may be awarded on summary judgment only where the evidence is conclusive. *See Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Auz v. Cisneros*, 477 S.W.3d 355, 359 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). "A party prevailing on a claim for breach of contract may recover reasonable attorney's fees, provided the fees are properly proven." *Id.* One prerequisite to recovering attorney's fees under chapter 38 is presentment of the underlying claim to the opposing party or her agent. Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2) (West 2015). The claimant bears the burden of pleading and proving that he made presentment of the claim to the opposing party. *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983); *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "The purpose of the presentment requirement is to allow the party against whom the claim is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees." *Gibson*, 440 S.W.3d at 157 (citing *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981)). "Generally, presentment is an issue of fact." *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Arawak acknowledges that presentment is "a threshold to recovering attorneys' fees," but argues that "[s]eparately or together [its] demands satisfy

---

[31] *See supra* note 10.

33

Chapter 38's presentment requirement." However, neither of the documents presented by Arawak was authenticated. Yamin discussed the emails in exhibit A in his deposition; therefore, the trial court could properly consider these emails. *See Neely*, 302 S.W.3d at 344 n.14. However, Arawak's demand letter and transmission email in exhibit B were not authenticated, did not otherwise constitute competent summary-judgment evidence, and could not be properly considered by the trial court. *See Guerrero*, 465 S.W.3d at 703–04; *Polmounter*, 2006 WL 2548239, at *3; *Blanche*, 74 S.W.3d at 452.

Even assuming Pan's email to Yamin requesting a full refund proved presentment of the debt or claim related to the undelivered 13-5/8″ casing, Arawak failed to present evidence of any presentment of a debt or claim related to TBI's refusal to buy back the 20″ and 26″ casing. Arawak has not provided, and we have not located, any authority supporting that evidence showing presentment of only a portion (here, less than half) of a party's contract claim conclusively establishes the presentment prerequisite for attorney's fees on the party's whole contract claim for purposes of summary judgment. Accordingly, Arawak failed to show that there was no genuine issue of material fact on the presentment requirement to prevail on its attorney's-fee claim. *See* Tex. R. Civ. P. 166a(c); Tex. Civ. Prac. & Rem Code Ann. § 38.002(2); *cf. Sacks v. Hall*, 481 S.W.3d 238, 252 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (reversing jury award of section-38.001 attorney's fees to orthodontist based on no evidence of presentment for $1,220 due under contract for services where office sent patient ledger stating that amount due was $459). Therefore, the trial court erred by granting summary judgment as to Arawak's attorney's fees.

34

We sustain TBI's thirteenth issue.[32]

## E. Costs

We already have determined that the trial court properly could grant summary judgment to Arawak on its contract claim and TBI's counterclaims. *See* Tex. R. Civ. P. 131 (successful party to suit may recover costs). In its fourteenth issue, TBI challenges the trial court's award of costs to Arawak in the amount of $16,611.08 because certain of the expenses included were not properly recoverable as costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b) (West 2015). Arawak concedes that certain included costs were not properly taxable and agrees that the proper amount of costs the trial court should have awarded as to Arawak was $2,092.05.[33]

We sustain TBI's fourteenth issue.

## F. Prejudgment interest

In its fifteenth issue, TBI challenges the trial court's award of prejudgment interest to Arawak because there was no evidence or no competent evidence of the accrual start date and because the calculation impermissibly accrued interest on attorney's fees and costs that had not yet been incurred. Arawak responds that TBI waived this issue due to inadequate briefing. We disagree. Arawak's motion for summary judgment must stand or fall on its own merits, and even TBI's failure to answer or respond cannot supply by default the proof necessary to establish Arawak's right to prejudgment interest. *See Tello*, 218 S.W.3d at 118–19. In any event, TBI raised these arguments both on appeal and in the trial court in TBI's response to Arawak's brief on attorney's fees, costs, and interest.

---

[32] Because we reverse the trial court's summary-judgment award of attorney's fees based on presentment, we do not reach TBI's other arguments within this issue. *See* Tex. R. App. P. 47.1.

[33] TBI does not dispute that Arawak proved it incurred $2,092.05 in taxable court costs.

"In Texas, prejudgment interest accrues beginning either on the 180th day after the defendant received written notice of the claim or on the date the suit was filed, whichever occurs first." *I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S.W.3d 467, 479 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see* Tex. Fin. Code Ann. § 304.104 (West 2016); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998). "The awarding of prejudgment interest serves two purposes: (1) fully compensating plaintiffs for the lost use of money, and (2) encouraging both settlement and speedy trials." *I-10 Colony*, 393 S.W.3d at 479. "Prejudgment interest is awarded to fully compensate the injured party, not to punish the defendant." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006). The trial court has discretion to award prejudgment interest as governed by equitable principles. *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Arawak first filed its contract claim on October 11, 2016. The trial court awarded Arawak prejudgment interest on its total contract damages, attorney's fees, and costs, beginning on September 7, 2016. Arawak based its starting date for purposes of accrual of prejudgment interest on March 11, 2016. We already have determined that Arawak did not conclusively establish presentment of its entire contract claim to support its attorney's-fee award. Likewise, even assuming the March 11, 2016, email provided written notice to TBI of that portion of Arawak's contract claim related to the undelivered 13-5/8″ casing, it would not support accrual of prejudgment interest on Arawak's entire contract claim. *See I-10 Colony*, 393 S.W.3d at 480 ("[S]ince one of the purposes of prejudgment interest is to encourage settlement and expedite trial, starting accrual of such interest on a particular claim before that claim was even raised would not serve that purpose."). That is, it would not be equitable to charge TBI for prejudgment interest accruing on the entirety of

Arawak's contract claim where there is no evidence of when or even that TBI received notice of the whole claim. *See id.*; *see also Johnson & Higgins*, 962 S.W.2d at 532 ("Allowing plaintiffs to accrue prejudgment interest even before the defendant becomes aware of the claim is at odds with the principle . . . that obviously, a defendant must have notice and an opportunity to settle a claim in order to advance [the] objective of expedited settlements and trials." (internal quotation marks and citation omitted)). Therefore, we conclude that the trial court erred in awarding prejudgment interest starting on September 7, 2016.

Next, we consider whether it was proper for the trial court to calculate prejudgment interest based on Arawak's attorney's fees and costs.[34] Prejudgment interest is generally not allowed on an award of attorney's fees and costs. *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 325 (Tex. 1994), *abrogated on other grounds*, *Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 909 (Tex. 2005). Our court has noted a split among the courts of appeals regarding the award of prejudgment interest on attorney's fees paid before judgment and therefore has upheld an award of prejudgment interest on attorney's fees that the plaintiff "had already paid prior to the entry of judgment." *Nova Cas. Co. v. Turner Constr. Co.*, 335 S.W.3d 698, 706 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (subs. op. on reh'g) (discussing cases). Arawak did not provide evidence that it had already paid its counsel any attorney's fees prior to judgment. Nor has Arawak provided, and we have not located, any authority supporting that a trial court properly may award prejudgment interest on attorney's fees without such evidence. We conclude that the trial court could not properly award Arawak prejudgment interest on attorney's fees and costs.

---

[34] We already have sustained TBI's issues regarding Arawak's attorney's fees and costs.

We sustain TBI's fifteenth issue.[35]

## G. Striking of TBI's first amended answer and counterclaim

In its sixteenth and seventeenth issues, TBI argues that the trial court abused its discretion in granting Arawak's motion to strike TBI's amended answer and counterclaims. First, TBI contends that its amendments[36] were timely under Texas Rule of Civil Procedure 63 and it did not require leave of court to file them. *See* Tex. R. Civ. P. 63.[37] Second, TBI argues that the trial court abused its discretion in striking the pleadings because none of the criteria for prejudice or surprise was shown.

Except within seven days of trial or thereafter (during which leave of court is required), generally a party may amend her pleadings at any time that does not operate as a surprise to the opposing party. *NCS Mgmt. Corp. v. Sterling Collision Ctrs., Inc.*, 108 S.W.3d 534, 536 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see* Tex. R. Civ. P. 63. However, "[a] trial court may conclude that an amendment is, on its face, calculated to surprise or would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial." *Id.* (citing *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980)). An amendment that is prejudicial on its

---

[35] The trial court's "total judgment amount" for purposes of awarding postjudgment interest included the erroneous awards of attorney's fees, costs, and prejudgment interest. TBI does not challenge Arawak's right to postjudgment interest; however, this figure requires recalculation on remand.

[36] TBI also raised certain of the affirmative defenses first included in its amended answer—material breach, fraud, mutual mistake, impracticability, impossibility, and frustration of purpose—in its summary-judgment response. Arawak raised no objection, and there is no indication that the trial court did not consider these defenses when ruling on Arawak's motion for summary judgment.

[37] The original trial setting was May 29, 2017. TBI filed its first amended answer and counterclaim on May 19, 2017.

face (1) asserts a new substantive matter which reshapes the nature of the trial; (2) is of such a nature that it could not have been anticipated in light of the development of the case up until the time of amendment; and (3) would detrimentally affect the opposing party's presentation of its case. *See Stephenson v. Leboeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). When making this determination, courts may consider various factors, such as how soon before trial the amendment was made, the addition of new facts, causes of action, defenses, or increased liability, whether new causes of action or defenses are based on recently discovered matters, and whether the opposing party alleged surprise and that she was not prepared to try new matters. *See, e.g., id.* at 839–40; *Stevenson v. Koutzarov*, 795 S.W.2d 313, 321 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

On appeal, a trial court's refusal to allow an amendment will not be disturbed unless the complaining party shows a clear abuse of discretion. *NCS Mgmt.*, 108 S.W.3d at 536; *see Keys v. Litton Loan Servicing, L.P.*, No. 14-07-00809-CV, 2009 WL 4022178, at *9 (Tex. App.—Houston [14th Dist.] Nov. 24, 2009, no pet.) (mem. op.). Only if it is clear from the record that the trial court acted in an arbitrary manner, without any reference to guiding rules and principles, and could reach but one decision, will we reverse a ruling on a motion to strike. *Keys*, 2009 WL 4022178, at *9; *NCS Mgmt.*, 108 S.W.3d at 536–37; *see In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (per curiam).

Although not required to obtain leave of court to do so, TBI filed its amendments just ten days before the original trial setting. Arawak alleged both surprise and that the amendments were prejudicial on their face where they asserted new causes of action and defenses. TBI's amended counterclaim included totally new claims for tortious interference and for concerted action and conspiracy, and TBI's amended answer asserted several defenses for the first time. TBI asserts that

39

these were not "new substantive matters" because "the factual basis of [its] claims and defenses was unchanged." TBI further asserts that "the factual allegations of the amended counterclaim were virtually identical to those of the original counterclaim" and therefore Arawak easily could have anticipated the amendments and could not have been surprised. We disagree.

Here, more than seven months after Arawak filed suit against TBI, for the first time in its amended counterclaim, TBI alleged that Arawak's personnel acted in concert with a certain named TBI competitor to block TBI's purchase of the 13-5/8″ casing. For the first time in its amended counterclaim, TBI alleged that Arawak, acting through its employees, agents, and/or representatives jointly participated in concerted action with TBI's competitor, TBI's own supplier, and other suppliers to commit torts and "entered an agreement among themselves" for unlawful purposes. These additional allegations involving Arawak's concerted action with other entities weighed against permitting TBI's first amended counterclaim. *Compare Flo Trend Sys., Inc. v. Allwaste, Inc.*, 948 S.W.2d 4, 7 (Tex. App.—Houston [14th Dist.] 1997, no writ) (plaintiff first pleaded single business enterprise theory as to two companies in amended pleading), *Stevenson*, 795 S.W.2d at 321 (explaining "two amendments were a wholesale revision of the [plaintiff's] suit"), *and Hajdik v. Wingate*, 753 S.W.2d 199, 203 (Tex. App.—Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d 717 (Tex. 1990) (fraud in general related to inducing plaintiff into venture was "totally different" from fraud associated with supervising apartment project after plaintiff became a shareholder), *with Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 839 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (plaintiff "unlike the plaintiffs in *Hajdik* and *Stevenson*, did not allege new facts when it added its statutory-fraud claim"), *Graham v. Adesa Tex., Inc.*, 145 S.W.3d 769, 776 (Tex. App.—Dallas 2004, pet denied) (plaintiffs alleged same set of facts on amended negligence claims), *and*

*Stephenson*, 16 S.W.3d at 839–40 (trial amendment would not inject any additional facts).

In addition, Arawak alleged prejudice where its summary-judgment motion already was on file and pending, and that allowing the amendments would detrimentally affect Arawak by delaying its rightful recovery. Finally, it appears that TBI already knew about the newly pleaded matters and they were not based on any newly discovered facts. That is, TBI could have brought them earlier. *See Stevenson*, 795 S.W.2d at 321; *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 492 (Tex. App.—Corpus Christi 1990, writ denied). Under these circumstances, we cannot conclude that the trial court committed any clear abuse of discretion.

We overrule TBI's sixteenth and seventeenth issues.

### III. CONCLUSION

Accordingly, we conclude that the trial court properly granted summary judgment on Arawak's contract claim and TBI's contract and fraud counterclaims, and properly struck TBI's first amended answer and counterclaim. However, we conclude that the trial court improperly granted summary judgment on Arawak's attorney's fees and prejudgment interest. The trial court further erred in the amount of Arawak's award of costs. Therefore, we affirm in part and reverse in part the trial court's final judgment, and remand for further proceedings in accordance with this opinion.

/s/     Marc W. Brown
Justice


Panel consists of Justices Boyce, Jamison, and Brown.

41